Easley vs. Whipple.

Easley vs. Whipple.

*February 5 — May 31, 1883.*

MARATHON COUNTY LANDS: *Statute authorizing conveyance to state construed: Lands not "held" by grantee in tax deed void on its face.*

1. Sec. 1, ch. 22, Laws of 1867, authorized the conveyance, by Marathon county to the state, of certain lands, in such distinct lots or parcels "as the said county shall now hold by virtue of tax deeds issued upon sales for delinquent taxes heretofore made." Sec. 4 provided that such lands might be held and disposed of by the state, "*provided* no such lands shall be disposed of or sold until the expiration of one year from the passage of this act, at which time the said conveyance from said county to the state shall be conclusive evidence of an absolute title to said lands in the state, unless suit shall be instituted to invalidate the same within that time." *Held*, that the county could not be said to "hold" lands by virtue of a tax deed void on its face, and that said act

was not intended to validate such a deed. The state, therefore, obtained no title by the conveyance to it of lands to which the county had no other title than such void tax deed, even after the expiration of the year from the passage of said ch. 22.

2. Whether the limitation in the proviso of sec. 4, above quoted, is valid, is not determined.

APPEAL from the Circuit Court for *Marathon* County.

Action to recover possession of the northeast quarter of the northeast quarter of section 19, township 26 north, range 5 east, in Marathon county. The substance of the complaint is stated in the opinion. The patent to the defendant's grantor is alleged to have been issued by the state on the 12th of May, 1880. The defendant demurred to the complaint on the ground that the action was not commenced within the time limited by ch. 22, Laws of 1867. The plaintiff appealed from an order sustaining the demurrer.

For the appellant there was a brief by *Grace & Craven*, his attorneys, and oral argument by *Mr. Grace*. There was, also, upon the same side, a brief and oral argument by *Moses Hooper*.

For the respondent there was a brief by *Eldred & Bump*, his attorneys. Briefs were also filed and the cause argued orally by *P. L. Spooner* and *L. F. Frisby*.

The following opinion was filed February 20, 1883:

COLE, C. J. The complaint states that the land in question was sold in 1863 by Marathon county for delinquent taxes; that the county clerk, in October, 1866, executed a tax deed of the same to the county, which deed was duly recorded October 10, 1866. The county alone was named as grantor in the deed. The land was then, and always has been, wild, unoccupied, and uncultivated. The tax deed was clearly void on account of the omission of the name of the state as grantor. Sec. 50, ch. 22, Laws of 1859; *Woodman v. Clapp*, 21 Wis., 355; *Wilson v. Henry*, 40 Wis., 594. The deed being void on its face did not operate to change the

constructive possession which remained in the original owner; nor was it a sufficient color of title to support the three years' statute of limitations in favor of the grantee named therein. *Lain v. Shepardson*, 18 Wis., 59. Did the matter stop here no one would claim that the plaintiff, who holds the land by patent from the United States, was divested of his title by the tax deed. But the complaint proceeds further to state that this tract, with other lands, was conveyed in June, 1867, by the officers of Marathon county, to the state of Wisconsin, by a quitclaim deed, under and pursuant to ch. 22, Laws of 1867, and that the state sold and issued a patent for the tract to the defendant's grantor.

The act of 1867, it is said by the learned counsel for the defendant, was a curative statute, which operated to make valid the void tax deed by which the land was conveyed to Marathon county, and bars the plaintiff's right of action. A majority of the court are of the opinion that this view of that law is incorrect and cannot be sustained. Waiving on this appeal — as we do — all questions as to the constitutionality of that enactment, which were so ably presented on the argument, the majority think the law does not apply to this case. This act was published on the 8th of March, 1867, and may be deemed to be in force from that day. The first section authorized the clerk of the board of supervisors, in behalf of the county, to convey to the state of Wisconsin 40,540 acres of land situated in the county; the land to be taken from town 26, in the south part of the county, and extending north until the whole amount was taken, in such distinct lots or parcels, and without exception, " *as the said county shall now hold by virtue of tax deeds issued upon sales for delinquent taxes heretofore made.*" The second section authorized and required the clerk to deliver over to the secretary of state, for the use and benefit of the state, all outstanding tax certificates upon the lands conveyed. The lands and tax certificates were conveyed and delivered in payment of $22,271.30, delinquent state tax due and owing from

Marathon county. The fourth section provided that the lands so conveyed to the state should be held and disposed of in the same manner and upon the same terms and conditions as swamp and overflowed lands, at the minimum price of seventy-five cents per acre: " provided no such lands shall be disposed of or sold until the expiration of one year from the passage of this act, at which time the said conveyance from said county to the state shall be conclusive evidence of an absolute title to said lands in the state, unless suit shall be instituted to invalidate the same within that time."

This is all there is of this act; and it will be seen that it does not by any express words attempt to cure defects in tax deeds. Certainly, it does not declare that tax deeds issued to Marathon county, which are void by reason of the omission of the name of the state as grantor, shall be valid. No such language will be found in the law anywhere; we therefore need not consider the question whether the legislature would have power thus to validate deeds void on their face and divest the title of the original owner. But, it is said, we must presume the legislature had full knowledge when the law was enacted that all tax deeds issued to Marathon county were defective, and that the intent to heal these imperfections must be inferred from the passage of the law. We cannot understand upon what grounds such a presumption or inference could be made, for it is wholly unwarranted from anything in the act itself. The object of the law is plain and unambiguous. The legislature, in effect, by it consented to take from Marathon county a certain quantity of land in satisfaction of the delinquent state tax which the county owed. It consented to take lands which the county then "held by virtue of tax deeds issued upon sales for delinquent taxes" theretofore made. *Non constat* that the legislature knew of any imperfections in such tax deeds, or were legislating with reference to them. On the contrary, we must assume that the legislature only had in view tax deeds issued to the county, which were *prima facie* sufficient

Easley vs. Whipple.

to transfer the title. Without refining upon words, it seems to us the county could not be said to "hold" or possess lands by virtue of a tax deed which was absolutely void on its face. Such an instrument would not convey an estate to be held or possessed. We have no idea that the legislature, when it passed this law, had such tax deeds in view. It would, therefore, be a perversion of both the spirit and letter of the law to say it was intended to cure or make good a tax deed where the name of the state as grantor was omitted. The law has no application to such a deed. And the fact that this tract, with other lands, was conveyed by the clerk to the state, does not strengthen the defendant's title. If the county took no title by the void tax deed it could convey none.

An argument was attempted to be drawn from the limitation in the fourth section in support of the position that the legislature intended to confirm or validate a tax deed void on its face in enacting this law. But we cannot see that the limitation clause affects the question we have been considering. It may be that this limitation would cure irregularities in tax proceedings prior to the issuing of a tax deed valid on its face. It was claimed by the learned counsel for the plaintiff that the limitation was void on various grounds. We now decline entering upon the discussion of that point because we do not think it arises on this appeal. The majority of the court refrain from expressing any opinion in this case either in favor of or against the validity of the proviso. It will suffice to consider that question when it is properly presented on the record.

*By the Court.*— The order of the circuit court sustaining the demurrer to the complaint is reversed, and the cause remanded for further proceedings according to law.

TAYLOR and CASSODAY, JJ., dissent.

A motion for a rehearing was denied May 31, 1883.